IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6181-CR-HUCK/BROWN



UNITED STATES OF AMERICA,

Plaintiff,

vs.

HENRY HARRY McFLIKER, et al.,

Defendant.

### DEFENDANT HENRY HARRY McFLIKER'S
### OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

**COMES NOW**, the Defendant HENRY HARRY McFLIKER ("Mr. McFliker"), by and through his undersigned counsel, and hereby files his Objections to the Presentence Investigation Report ("PSR").

**I.     PRELIMINARY STATEMENT**

Although the PSR generally makes a good faith effort to assess the relevant facts and apply the appropriate Sentencing Guidelines, there are three (3) discrete issues within the PSR to which Mr. McFliker respectfully objects. Specifically, as more fully set Mr. McFliker objects to:

- The PSR's $1,936,553 calculation of loss amount applicable to Count III of the Superceding Information (PSR, p. 13, ¶ 44, p. 6, ¶ 13, and p. 17, ¶ 57), and the resulting 12 level increase in the base offense level for this count pursuant to United States Sentencing Guidelines ("USSG") § 2F1.1(b)(2). Mr. McFliker objects to: (a) the formula used by the PSR to calculate the loss; (b) the investments used as the basis for the loss, including its reliance on the uncorroborated "Declaration of Victim Losses" submitted by certain of Mr. McFliker's clients; and (c) the resulting loss amount.

- The PSR's failure to provide Mr. McFliker with the additional three (3) level decrease for Count I (money laundering conspiracy) as provided by USSG § 2X1.1(b)(2), and as contemplated by the Government and the defense in the Plea Agreement (Dkt. # 94, ¶ 7(b)).



MIA:150404:1

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

- Paragraph 12 of the PSR (PSR, p. 5) which concludes that Mr. McFliker "threatened" investors with "the possibility of being deported" to fend off their efforts to have their investments returned. This uncorroborated allegation is false, and, as discussed in Section III.3 below, is a distortion of conversations between Mr. McFliker and his visa clients concerning repayment and restitution issues.

Finally, in addition to the Objections noted above, the defense would also like to submit further details concerning Mr. McFliker's medical condition to supplement the "Physical Condition" section of the PSR.

## II.  BACKGROUND

The prosecution of Mr. McFliker arose out of his operation of a visa services business which assisted certain international clients' efforts to obtain, primarily, non-resident visas. During the course of providing these visa services, Mr. McFliker arranged to have a number of his clients invest in business opportunities which were suggested by, and in many cases controlled, in whole or in part, by Mr. McFliker. These investments in many cases served as the basis of the client's visa application. One such company in which Mr. McFliker directed the clients to invest was Airspares Network, Inc., a distributor of spare airplane parts.

Mr. McFliker was the subject of a reverse sting operation related to his visa services business and the investment opportunities he offered to various foreign national clients. On March 1, 2001, Mr. McFliker pled guilty to three counts of a Superseding Information for conspiracy to launder money (Count I); conspiracy to commit passport and visa fraud (Count II); and conspiracy to transfer monies by fraud (Count III). Following months of negotiation, and after Mr. McFliker's "substantial cooperation" which will be the subject of the Government's Section 5K1.1 Motion at his sentencing hearing, the Government and Mr. McFliker entered into a Plea Agreement (Dkt. # 94).

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

The Plea Agreement contemplated, *inter alia*, that Mr. McFliker would receive the three (3) level decrease provided by USSG § 2X1.1(b)(2) because the reverse sting operation involved only "attempted" money laundering, in which there were no completed acts. In addition, as part of his please, agreed to repay those clients who: (a) invested in Mr. McFliker's business opportunities to support their visa application; and (b) desired a repayment of their capital investment.

### III. SPECIFIC OBJECTIONS

*1. The Loss Amount Assigned to Count III of the Superceding Information and Used for Offense Level Calculation is Incorrect. Consequently the Resulting Total Offense Level Determined Pursuant to Chapter 3 of the Guidelines is at Least One Level Too High.*

The PSR's assertion that Mr. McFliker "admits" to "owing 47 foreign nationals a total of $1,936,553" (PSR, p. 6, ¶ 13) for investments made by them in conjunction with Mr. McFliker's visa service business, which is used as the basis for the PSR's calculation that a 12 level "loss" increase pursuant to USSG § 2F1.1(b)(1)(M), is wrong. The PSR apparently reaches this loss amount by relying on uncorroborated information which the Government obtained at the inception of the case using documents produced by Mr. McFliker pursuant to the grand jury subpoena, and/or uncorroborated "Declaration of Victim Losses" submitted by certain of Mr. McFliker's clients. However, since that time, Mr. McFliker and his counsel have held extensive meetings with the Government and its investigators concerning: (a) the actual amount of investments made by each client, which in some cases is lower than the amount listed in their investment contract with Mr. McFliker; (b) the amount repaid by Mr. McFliker either pre- or post-indictment, which now totals close to $1 million dollars; (c) the difference between the amount reported as owed, if any, by an individual investor to Victim's Services, and the amount actually invested by the client, and repaid by Mr. McFliker according to his bank and financial

MIA:150404:1                                    3

Case 0:00-cr-06181-PCH    Document 111    Entered on FLSD Docket 07/02/2001    Page 4 of 10

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

records; and (d) the amount remaining to be repaid, and the repayment plans accepted by individual investors.

In addition, the Government and the defense have discussed an appropriate and equitable formula for determining loss calculation in this case, which would be based on the total amount of monies invested by Mr. McFliker's individual clients, less all payments or other consideration provided by Mr. McFliker to the client. As a consequence of the information provided by Mr. McFliker, the defense anticipates that Court will find that the loss amount is between $800,000 and $1,499,999, which would result in a 11 level increase in the Base Offense Level for Count III, rather than the 12 level increase assigned by the PSR. *See* Plea Agreement, Dkt. # 94, ¶ 6(d)[1].

Moreover, as discussed in Section 2 below, if Count III's Adjusted Offense Level is reduced to 19 from 20, and the 3 level reduction provided by USSG § 2X1.1(b)(2) is applied to Count I, then the Combined Adjusted Offense Level under Chapter 3's "grouping" provisions is reduced to Level 21 from Level 22, and Mr. McFliker's resulting Total Offense Level for sentencing purposes should likewise be reduced from Level 19 to Level 18.

2.  ***The Based Offense Level for Count I Should Be Reduced By 3 Levels Pursuant to USSG § 2X1.1.***

The PSR fails to provide a 3 level reduction to Count I's offense level computation. The Government and the defense agreed during plea negotiations, that the money laundering sting operation did not result in Mr. McFliker completing any "acts" toward the offense. *See* Plea Agreement (Dkt. # 94, ¶ 7(b)). Moreover, it is well-settled under prevailing Eleventh Circuit

---

[1] The Plea Agreement provides in relevant part that "[t]he parties agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed on the information: * * *
 (d) As to Count 3, the amount of loss for purposes of relevant conduct is in excess of $800,000, but not more than $1,500,000...."

MIA:150404:1                                                4

Case 0:00-cr-06181-PCH    Document 111    Entered on FLSD Docket 07/02/2001    Page 5 of 10

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

law that USSG § 2X1.1 applies to conspiracies to commit money laundering, and that a 3 level reduction should be applied where the defendant or co-conspirators did not complete all acts necessary to complete the money laundering offense. *See United States v. Khawaja,* 118 F.3d 1454, 1458 (11th Cir. 1997).

The Eleventh Circuit's teachings in *Khawaja*, a case whose facts are remarkably similar to those present in this case, are instructive. As in this case, the defendant was the target of a reverse money laundering sting operation in which the undercover agent, posing as an "international carpet" businessman, advised the defendant that "approximately $2 million" generated from "cocaine sales" needed to be "legitimize[d] and invest[ed] in the United States." 118 F.3d at 1458. The defendant enlisted the help of other "friends" to assist in the laundering operation, which would be conducted through the cash "sale" of carpets. *Id.* In contrast to the case against Mr. McFliker, the money laundering operation in *Khawaja* operated for more than two months, and approximately $570,000 was "successfully" laundered by the defendants. *Id.* Mr. Khawaja's PSR, like Mr. McFliker's here, did not provide him with the 3 level reduction pursuant to Section 2X1.1.

The Eleventh Circuit held that USSG § 2X1.1 specifically "applies to conspiracies to commit money laundering," and that a three-level reduction is required "unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense...." *Id.* Remarkably, although the defendant in *Khawaja* completed all acts sufficient to "launder" $570,000 of the $2,000,000 that was offered by the undercover agent, the Court still found that he was entitled to the three level reduction pursuant to Section 2X1.1. *Id.*

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

Here, as reflected in the Plea Agreement, the Government recognizes that neither Mr. McFliker nor the other defendants involved completed *any* money laundering "acts" as contemplated by § 2X1.1, and as a result Mr. McFliker is guilty only of "attempted" money laundering, not the underlying offense. Thus, USSG § 2X1.1 entitles Mr. McFliker to a 3 level decrease to the base offense level for Count I. *See Khawaja,* 118 F.3d at 1458-59.

As discussed above, the Adjusted Offense Level for Group One (predicated on Count I), should be reduced to Level 17 by application of USSG § 2X1.1, and Group Two's Adjusted Offense Level (predicated on Count III) should be reduced to Level 19 from 20 based on the revised loss amount provided to the Court at the Sentencing Hearing. Therefore, the Total Offense Level for sentencing purposes, after application of the Guideline's multiple grouping rules and "acceptance of responsibility" adjustments set forth in Chapter 3, should be Level 18, as contrasted with Level 19 recommended by the PSR.

3.  *Mr. McFliker Has Not "Threatened" Investors with Deportation.*

Although the defense is not interested in quibbling over a few erroneous facts which inevitably made their way into the thirty-three page, 143 paragraph PSR, there is one unsubstantiated allegation that is untrue, and if left unaddressed, could ultimately bear on the sentence received by Mr. McFliker. Specifically, in the PSR's Offense Conduct section provided to the Probation Officer by the Government, it is alleged that after certain foreign national clients of Mr. McFliker's provided him with investments to support their visa applications, "[w]hen disagreements over the monies arose and the individuals sought full payment of their investment, they were threatened by McFliker with the possibility of being deported from the United States. Some of the foreign nationals were able to recoup part of their investment." (PSR, pp. 5-6, ¶ 12).

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

During Mr. McFliker's extensive cooperation sessions with the Government, he provided detailed information concerning the total amount of investments made by his visa clients; the total amount repaid; and communications between Mr. McFliker and certain of his investors. The defense has also provided the Government with information demonstrating that almost $1,000,000 has already been repaid by Mr. McFliker to his investors, and that there remains an additional $1,190,000 left to be repaid for which Mr. McFliker and/or his counsel have, in most cases, successfully arranged repayment schedules with the investors. Moreover, much of the investments returned by Mr. McFliker to the clients took place pre-indictment.

As for communications between Mr. McFliker and his clients concerning their investment, at no time did Mr. McFliker ever threaten them with deportation. On several occasions prior to Mr. McFliker's indictment and subsequent conviction, a foreign national visa client whose investment was used to "support" his visa application, asked for a return of his investment. At that time, Mr. McFliker would attempt to discourage the client from seeking the return of his investment by informing him that since the business investment was in most cases the "sponsor" for the visa application and any visa status obtained by the investor, that a return of the investment and elimination of the "sponsor" could cause the INS to investigate the visa applicant (and Mr. McFliker), which could have dire consequences for both of them. Not only did Mr. McFliker not "threaten" the investor with "deportation," but it was in Mr. McFliker's best "business" interest that these clients preserve their visa status, remain in the United States, and retain their investment in Mr. McFliker's business opportunities.

IV. **SUPPLEMENTAL INFORMATION CONCERNING MR. McFLIKER'S MEDICAL CONDITION**

In addition to the facts set forth in the PSR's "Physical Condition" section, there are additional factors concerning Mr. McFliker's medical condition that the defense would like to

MIA:150404:1                                7

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

bring to the Court's attention. (*See* PSR, p. 20, ¶ 84). As set forth in a letter addressed to the Court dated June 25, 2001 attached hereto as Exhibit "A," Mr. McFliker's cardiologist, Dr. Seth J. Baum, M.D., FACC, has been caring for him since 1996 when Mr. McFliker underwent an angioplasty procedure. At Dr. Baum's direction, Mr. McFliker is currently taking Altace, Tenormin, and Lipitor medications, for among other things, hypertension. Further, Dr. Baum also directed that Mr. McFliker undergo a cardiac rehabilitation program following his angioplasty in 1996. Since that time and through to today, Mr. McFliker has been a patient of the John W. Henry Center of Integrative Medicine of the Boca Raton Community Hospital, and has worked three times per week with a therapist. Finally, as recently as this past Sunday, June 24, 2001, Mr. McFliker was treated for chest pains at his local hospital, and diagnosed with diabetes.

## V.  **CONCLUSION**

For the reasons set forth above and as presented during his sentencing hearing, Mr. McFliker respectfully urges that the Court: (a) provide Mr. McFliker with a three level reduction for Group One to reduce its Adjusted Offense Level to 17; (b) find that the loss amount under USSG § 2F1.1 arising out of Count III (Group Two) is between $800,000 and $1,500,000, which after application of the multiple grouping and "acceptance of responsibility" adjustments, results in a Adjusted Offense Level of 18 for sentencing purposes; (c) and for such other and further relief as the Court deems proper.

USA v. McFliker
Case No. 00-6181-CR-Huck/Brown
Defendant Henry Harry McFliker's
Objections to Presentence Investigation Report

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via fax and U.S. First Class Mail this 29th day of June, 2001 to: Diana L.W. Fernandez, Esq., Office of the United States Attorney, 500 East Broward Boulevard, Fort Lauderdale, FL 33394, and Georgann Stanley, United States Probation Office, 299 E. Broward Blvd., Room 409, Ft. Lauderdale, FL 33494.

        **Respectfully Submitted,**

        **RUDEN, McCLOSKY, SMITH,**
        **SCHUSTER & RUSSELL, P.A.**
        **Attorneys for Defendant**
        **Henry McFlicker**
        **200 East Broward Boulevard**
        **Post Office Box 1900**
        **Fort Lauderdale, Florida 33302**
        **Tel:   (954) 764-6660**
        **Fax:  (954) 764-4996**

        **and**

        **701 Brickell Avenue**
        **Suite 1900**
        **Miami, FL 33131**
        **Tel:   (305) 789-2771**
        **Fax:  (305) 537-3971**

By: _____
        MARC S. NURIK
        Florida Bar No. 272817
        MICHAEL S. POPOK
        Florida Bar No. 44131

 *Integrative Heart Care*

SETH J. BAUM, M.D., F.A.C.C.
Diplomate American Board of Clinical Cardiac Electrophysiology
Diplomate American Board of Cardiovascular Disease
Diplomate American Board of Internal Medicine

June 25, 2001

Honorable Paul C. Huck
United States District Court
Miami, FL

Dear Judge Huck:

I have been caring for Mr. McFlicker since March of 1996. At that time he had a significant right coronary stenosis and I performed a single vessel angioplasty. His last visit with me was 5/24/01.

He is currently on numerous medications, including Altace, Tenormin, Lipitor, aspirin and a high-dose multivitamin/multimineral supplement. He is overweight and needs to continue to exercise and to employ all strategies for risk factor modification. He obviously needs continued observation and care with regard to risk factor modification such as limiting hypertension and decreasing weight.

If I can be of any further assistance, please do not hesitate to contact me.

Sincerely,

Seth J. Baum, M.D., F.A.C.C.

SJB/ap



2300 Glades Road • Suite 305 East
Boca Raton, FL 33431
Tel: (561) 367-8155 • Fax: (561) 367-8931

EXHIBIT A