# URGENT AND IMPORTANT

# Fax

FILED by _____ D.C.

SEP 1 2 2002

CLERK...DDOX
U.S. DIST. CT
S.D. OF FLA.  MIAMI

**To:**  US District Court Clerk's Office  **For Attention:** Ms. Diana Fernandez

**From: Prof. Lovemore Mbigi**

**Fax:**  (954) 356 7230                **Pages:**                **1 of 13**

**Phone (954) 356 7255 ext. 3589**      **Date:** 13 August 2002

## RE: MOTION TO REDIRECT RESTITUTION ORDER PAYMENTS TO JOYCE MBIGI: CASE NUMBER 00-6181-CR-HUCK

**X** Urgent  ☐ For Review  ☐ Please Comment ☐ Please Reply ☐ Please Recycle

---

1.  The restitution order money was borrowed from various financial institutions by the family for Mr. Henry McFlicker to invest and we are still repaying it.

     1.1  Most of these financial institutions have obtained court orders against Mrs. Mbigi and myself.

     1.2  Some have issued summons against us and my SA lawyers had successfully negotiated with them on the strengths of the restitution order payments for us to repay them at the rate of $ 7 500.

     1.3  The remaining amount of $ 7 500 of the restitution money is to be used to live on and to rebuild my management consulting business.

1.  **Motion to Redirect all Future Restitution Order Payments**

     1.1  I have just learnt about the above motion to redirect all future restitution order payments or Mrs. Joyce Mbigi to support a Temporary Relief Order entered by the Family Division Court of $ 15 000 per month on the basis of false information provided by Mrs Mbigi under oath regarding a non existent family asst base of $ 19.7 million.

     1.2  The Rules of the House required under Family Law requiring financial disclosure of the parties were not followed.

---

P O Box 321, Strathavon, Johannesburg, SA 2031
46 Dennis Road, Atholburst, Sandton, Johannesburg, SA
E-mail rmc@netactive.co.za
Phone (011 27 11) 786 5767   Fax (011 27 11) 786 1371
Cell (011 27) 82 800 3623

PMB 525, 21218 St. Andrews Boulevard
Boca Raton, FL 33433
E-mail lvm9@aol.com
Phone (561) 477 0481   Fax (561) 477 7325
Cell (561) 212 9952



1.3   Mrs. Mbigi later admitted in a deposition taken by my lawyer Mr. Charles Wender taken on 24 May 20902, to have lied under oath. A coy of this deposition regarding case number 2001 DR 10932 FZ can be provided on request.

1.4   Mr. Charles Wender's contact information is:

109 West Palmetto Park Road
Boca Raton, Florida 33432
Tel     :     (561) 368 7004
Fax    :     (561) 368 5798

## 2. Criminal Charges Against Mrs. J Mbigi

2.1   I am writing to you in your capacity as Assistant US Attorney to lay criminal charges against Mrs. Joyce Mbigi fro having deliberately provided false information of a non-existent asset base of $ 19.7 million in order to obtain an excessive Temporary Relief Order and subsequently obtain the restitution order payments.

2.2   I am requesting your office to charge her for lying under oath.

2.3   I am prepared to personally come to your office with documentary proof to that effect. I am also prepared to make an affidavit on the matter any day up to and including Friday 16 August 2002, before my return to Africa.

## 3. Objection to Redirection of Restitution Order Payments

3.1   I am writing in your capacity as Assistant US Attorney to object to the entry of an order which redirects my restitution order payments to Mrs. Joyce Mbigi, until the Courts clears her of deliberately lying to the Court under oath in order to obtain a highly inflated Temporary Relief Order, so that I would fail to meet it as my net income after expenses is less than $ 5 000 per month, which would give her and her lawyer all the restitution order money, leaving my child destitute.

3.2   This is a big scam, if not fraud by Mrs. Mbigi and her lawyer to loot my restitution order money.

3.3   They are taking advantage of me for being in Africa.

3.4   The restitution order money is all I have at the moment and the family borrowed most of it from financial institutions and I use half of it to pay them back. The family debt burr is close to $ 377 000 – this is my current grim financial reality.

---

P O Box 821, Strathavon, Johannesburg, SA 2031
46 Dennis Road, Atholhurst, Sandton, Johannesburg, SA
E-mail rmc@netactive.co.za
Phone (011 27 11) 786 5767     Fax (011 27 11) 786 1371
Cell (011 27) 82 800 3623

PMB 525, 21218 St. Andrews Boulevard
Boca Raton, FL 33433
E-mail lvmr9@aol.com
Phone (561) 477 0481     Fax (561) 477 7323
Cell (561) 212 9952

**4. Temporary Relief Order**

4.1   The Temporary Relief Order entered by the Family Division Court was supposed to be for a period of 3 months – Mrs. Mbigi originally applied for 6 months which was turned down.

4.2   This odder should long ago have come up for review and two hearings were postponed because Judge James T Carlisle was not available. The Acting Judges were no prepared to make a decision – I suspect that this is because some of the procedures and house rules set by the Florida Family .Law were not followed when this Temporary Relief Order was made.

4.3   Mrs. Mbigi deliberately lied under oath and gave the Court fraudulent information - she has since admitted to doing so during the deposition taken by my lawyer Mr. Charles Wender on 24 May 2002 (**refer attached Exhibit 1**).

4.4   The Temporary Relief Order by its very nature is temporary. In my mind it then becomes questionable that an order that was entered by Judge James T Carlisle in Palm Beach Family Division Court Case umber 2001 DR 10932 (FZ) can then direct all future restitution order payments received by the US District Clerk's Office's Financial Unit to be forwarded to Mrs. Mbigi for the next 4 years to support a Temporary Relief Order which is supposed to have been reviewed after 3 months.

4.5   I feel that Judge James T Carlisle has treated me unfairly if this is repeated in the two upcoming hearings scheduled for 29 August 2002 and September 2002. I will be lodging a formal complaint in this regard, following the appropriate channels and structures.

5.   Therefore the undersigned prays that your office must not allow the order to be entered that directs the restitution order payments to Mrs. Mbigi until; she is cleared from the criminal charges for lying under oath. I am laying charges against her and until a

6.   The other details pertaining to this case are detailed below:

6.1   Mrs Mbigi is not financially desperate. She has accessed over $ 243 506 from funds from family accounts during the period 28 August 2001 to 12 August 2002 (**refer attached Exhibit 2**). In addition in June 2002 I paid her $ 18 000 and in July 2002 $ 15 000 of which $ 13 000 was from MetLife (documentary evidence to this effect can be furnished on request). Mrs. Mbigi's problem is excessive and unnecessary expenditure as shown by an analysis of her payments from our Merrill Lynch checking account for July 2002, which is detailed below (once again documentary proof is available on request):

---

P O Box 321, Strathavon, Johannesburg, SA 2031      PMB 525, 21218 St. Andrews Boulevard
46 Dennis Road, Atholhurst, Sandton, Johannesburg, SA      Boca Raton, FL 33433
E-mail rmc@netactive.co.za      E-mail lvmr9@aol.com
Phone (011 27 11) 786 5767   Fax (011 27 11) 786 1371      Phone (561) 477 0481   Fax (561) 477 7323
Cell (011 27) 82 800 3623      Cell (561) 212 9952

| EXPENDITURE | AMOUNT |
|---|---|
| Telephone ($ 573 + $ 300). | $ 873 |
| Southern Security. | $ 652 |
| TV Dish Network. | $ 190 |
| Gardening and Law ($ 440 + $ 99). | $ 539 |
| Bloomingdale | $ 114 |
| **TOTAL** | **$ 2 368** |

6.2   The restitution order money was borrowed from various financial institutions by the family for Mr. Henry McFlicker to invest and we are still repaying it.

   6.2.1   Most of these financial institutions have obtained court orders against Mrs. Mbigi and myself.

   6.2.2   Some have issued summons against us and my SA lawyers had successfully negotiated with them on the strengths of the restitution order payments for us to repay them at the rate of $ 7 500.

   6.2.3   The remaining amount of $ 7 500 of the restitution money is to be used to live on and to rebuild my management consulting business.

   6.2.4   I am in possession of all the documentation regarding court judgments, summons and negotiated monthly payments, which can be provided on request.

6.3   I am requesting you to not redirect payments to Mrs. Mbigi until after the end of September 2002 to allow the following to take place:

   6.3.1   The hearing on 29 August 2002 to review the Temporary Relief Order of $ 15 000 per month, which was made on the basis of false information provided by Mrs. Mbigi under oath, regarding a non existent asset base of $ 19.7 million.

   6.3.2   The hearing in September 2002 regarding the order to redirect payments which was made in my absence and a request for the continuance of the hearing on the above matter has already been made.

6.4   In the meantime I will continue to support Mrs. Mbigi ad my son using some of the restitution money until after the end of September 2002.

P O Box 321, Strathavon, Johannesburg, SA 2031
46 Dennis Road, Atholhurst, Sandton, Johannesburg, SA
E-mail rmc@netactive.co.za
Phone (011 27 11) 786 5767     Fax (011 27 11) 786 1371
Cell (011 27) 82 800 3623

PMB 525, 21218 St. Andrews Boulevard
Boca Raton, FL 33433
E-mail lvm9@aol.com
Phone (561) 477 0481     Fax (561) 477 7323
Cell (561) 212 9952

6.5  I am making a request to the United States Court Southern District Court of Florida to delay acting on the order to allow me to organize legal representation on the matter.

\

Respectfully submitted,

Prof. Lovemore Mbigi
SS Number: 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

/ Fax US District Clerk's Office: V Sanchez 13 August b2002

P O Box 321, Strathavon, Johannesburg, SA 2031
46 Dennis Road, Atholhurst, Sandton, Johannesburg, SA
E-mail rmc@metactive.co.za
Phone (011 27 11) 786 5767    Fax (011 27 11) 786 1371
Cell (011 27) 82 800 3623

PMB 525, 21218 St. Andrews Boulevard
Boca Raton, FL 33433
E-mail lvmr9@aol.com
Phone (561) 477 0481    Fax (561) 477 7323
Cell (561) 212 9952

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND FOR PALM BEACH
COUNTY, STATE OF FLORIDA

CASE NO.  2001 DR 10932 FZ

Florida Bar No. 246271

IN RE:    The Marriage of

**JOYCE MBIGI,**
                    Petitioner/Wife,

        vs.

**LOVEMORE MBIGI,**
                    Respondent/Husband,

and

**RAINMAKER MANAGEMENT
CONSULTANTS, INC.,**
                    Defendant,

and

**WILMORE CORPORATION, INC.,**
                    Defendant,

and

**THE INTERNATIONAL BUSINESS
SCHOOL,**
                    Defendant.

═══════════════════════════════◇

## MOTION FOR RELIEF FROM ORDER OF TEMPORARY SUPPORT AN MODIFICATION OF ORDER OF SUPPORT

**PLEASE TAKE NOTICE,** that the above named Respondent, LOVEMORE

MBIGI, moves the court for an Order vacating the Temporary Support Order entered in this case --

due to fraud, deliberate misrepresentations and a callous disregard for the truth in the Petitioner/

Wife's financial affidavit filed in support of her motion for temporary relief and the perjurious

testimony given at that hearing, and in support thereof submits as follows:

**Page 1 of 7**

1.      On January 11,2002 this Court held a temporary relief hearing in which the Court Ordered the husband to pay support in the sum of $15,000 per month. This Order was based upon the financial affidavit submitted by the wife, which attested to total assets of the parties of $19,563, 274.00 and monthly expenses of $26,375.00.

2.      Understanding that, by its very nature, a temporary relief hearing is short in duration and there was little chance or opportunity to adequately challenge the truth of the assertions made in the wife's financial affidavit. After the hearing, such an opportunity afforded itself by taking the oral deposition of the wife. It is readily apparent from a reading of that deposition that the wife either deliberately fabricated numbers or pretended that these numbers were accurate while knowing, in truth, that they were not. A copy of that deposition is being filed along with this motion and the contents of which should be deemed incorporated herein.

3.      The wife, who has an M.BA. Degree from Leicester University, has been a college professor, worked at Coppers and Lybrand, the accounting firm, and studied at Northeastern College, pretended that she did not know the difference between a term life insurance policy and whole life policy; stated that she knew that the value of certain businesses because "my husband told me", knowing full well that this never happened and that these claims where pure fabrication on her part. The wife simply lied about almost every aspect of her financial situation. An award of support cannot stand upon the shoulders of fraudulent financial affidavits and false testimony. See, DeClair v. Yohanan, 453 So.2d 375 (Fla. 1984); Wilkes v. Wilkes, 768 So.2d 1150 (Fla. 2d DCA 2000); Rule, 12.540, Fla. R. Fam. L.

4.      The wife made the most fantastic claims in her financial affidavit, as well as in her testimony before this court. (A Copy of that testimony is annexed hereto.) The most glaring of those false statements concern the wife's claims of some $20,000,000.00 in assets. As noted below, her claims are the sheer product of her imagination and have no basis in reality. This was made clear when the wife was called upon to explain her sworn statement. To illustrate:

a.      *RAINMAKER MANAGEMENT CONSULTS* — valued by wife at $2,000,000.00. At the hearing and on her affidavit the wife claimed under oath that Rainmaker Consultants was worth $2,000,000.00. But at her deposition, when probed as to the veracity source of that value, the wife had to admit that she really did not know and that she put down

$2,000,000.00, claiming that is what her husband told her the value of the Rainmaker "contracts" were. The wife, however, knew nothing about Rainmaker because she had not seen any of the Rainmaker books or records books for over two years, did not know what income it had, if any, and was merely speculating or guessing. (pp. 55-58 of the annexed deposition.) In truth, the wife just made up any number.

       b.     *WILMORE CORPORATION* – valued by wife at $200,000.00. The wife's sworn financial affidavit states that the Wilmore Corporation was worth $200,000.00. At her deposition she testified , however, that the last time she allegedly saw any of the books and records of Wilmore Corp. was in 1998. (pp. 53-54, wife's deposition) She admitted that all information concerning Wilmore was at least three years old (p. 54, wife's deposition). Again, the wife either deliberately lied or purposely mislead this Court by popping down any number that came into her head and claiming it. These claims are quite obnoxious in light of her superior education and knowledge in the field of business.

       c.     *UNIVERSITY* – valued by the wife at $6,000,000.00. The wife has represented to this Court, under oath, that an entity called University was worth some $6,000,000.00. This claim is perhaps more pernicious then the others, because the wife does not really know if such an entity even actually exists.. As revealed at her deposition (pp. 47-51), the wife knows absolutely nothing about University. The wife claimed that the $6,000,000.00 figure was based on what her husband allegedly told her, and that if he said it was worth $50,000,000.00 she would swear that is what it was worth. The wife cannot escape the requirements of truth and candor by resorting to the excuse that "my husband told me". This was the wife's own financial affidavit, not the husbands's. The wife deliberately mislead this Court by asserting values to property which she plainly knows are not the truth.

       d.     *LIFE INSURANCE MET-LIFE* – valued by the wife at $1,250,000.00. The wife testified at deposition that there was approximately $2,000.00 available to the parties from the Met-Life policy. Then, where did the value of $1,250,000.00 come from? The wife, feigning total ignorance of anything about life insurance, claimed that this was the value upon her husband's death, she thinks !!!! (pp. 98-99, wife's deposition) The wife's testimony remains forever contradictory.

On the one hand she claims that the only money available to her is $2,000.00, but that the policy is worth some $1,250,000.00. This just can't be, but she thinks that is the value at his death.

   e.   *SAGE LIFE* – valued by the wife at $5,000,000.00. At her deposition, the wife first insisted that the policy was presently worth $5,000,000.00; however, when pressed if she would accept the policy in exchange for real money she then "admitted" that she now believed the $5,000,000.00 was payable "after he dies." (pp. 65-67, wife's depositions) In reality the policy is presently <u>worthless.</u>

   f.   *MOMENTUM LIFE* – valued by the wife at $2,845,000.00. The wife claimed that this was the real value of the policy based upon her review of the policy but, of course, she did not "have the document with her." (pp. 68-68, wife's deposition)

   g.   *PENDING LITIGATION – $868,769.00.* This presumably is the restitution money ordered by the UNITED STATES DISTRICT COURT, the so-called McFlicker money, which is closer to $600,000,00. This figure, although inflated, at least represents a real asset, which is about as close the wife got to the truth in these entire proceedings.

   5.   It is all but apparent that the wife "inflated" or rather just fabricated a net worth statement of biblical proportions. She stated values in the millions when in fact there is zero value. Had she submitted these figures in a loan application for a mortgage she easily could be found guilty of criminal fraud. Is it any different that she now does it to a Court? The husband does not want to punish his children and wants to provide support for them, and would appeal to this Court to let him do so by the only present means possible --- which is to draw funds from the equity of their home, the only asset of value the parties have (except for the McFlicker restitution Order, which may turn out to be a real asset.)

   6.   Call the wife on her claims. The husband would suggest that, to demonstrate the extent of the fraud on this Court, he be permitted to purge his contempt and all future obligations to this wife, and that he give her, transfer to her, and forever make any claims upon the corporations and life insurance accounts that she has sworn and presented to this court as being worth in excess of $17,000,000.00. That, in exchange, he be relieved of his obligations to her. That would leave the home and the McFlicker funds to him. The wife should not flinch at such an offer, should she?

7.    It would appear that the wife has approached this case as a free-for-all – and anything goes. The husband, in contrast, is struggling to rebuild his finances after being swindled in the McFlicker scam. The husband wants to support his child, but cannot afford the lifestyle the wife is carrying on as if there were no financial setbacks. Which brings up the matter of the wife's misconduct concerning her claims of living expenses.

8.    *Wife's Deliberate Overstatement of Living Expenses*:  The wife claimed in her finical affidavit that she spent $26,375,000.00 per month to live.  A close examination of the affidavit and the wife's subsequent admissions at her deposition makes it clear that the wife used the same "I'll make up a figure" as she did for the asset aspect.  For example:

a.    The wife testified at deposition that she spent between $200.00 and $250.00 a week on food, which is roughly $1,000.00 per month. A high figure, but not unheard of. However, in her financial affidavit she represented to this Court she spent $3,000.00 per month on food for the household (pp. 77-78, wife's deposition).

b.    When confronted by her other claims of outrageous spending, the wife testified that she would spend $300.00 a week on lightbulbs -- which, one would submit, is utter nonsense.

c.    The wife claims that the house repairs are $1,000.00 per month, and at the same time she has a service contract to do the same repairs.

d.    The wife is not only guilty of acts of commission but also acts of omission. At the temporary relief hearing the wife failed to disclose to the court that in October of that year (2001), when the wife complained that the bills where not being paid, she personally withdrew and "cleaned out" the *Merrill Lynch Account* in the sum of $42,000.00 (pp. 96-97, wife's deposition). This tidy withdrawal was not disclosed in her financial affidavit, nor was it brought to this Courts's attention at the hearing for temporary relief, creating the improper impression that the wife and children were destitute.

9.    It is the husband's respectful submission that the Order for Temporary Relief entered in this case cannot stand upon the shoulders of a fraudulent and misleading financial affidavit of the magnitude submitted before this Court. While the wife does not deserve any relief from this Court and has forfeited any claims by her gross misconducts, it is not to suggest that the MBIGI

children should suffer for the misconduct of their mother. He suggests that this Court vacate the award of support, and enter an award of child support based upon the parties present financial status. To literally prove to this Court that what is represented herein as true with regard to the wife's claim of riches, the husband formally offers to her the following assets to satisfy his obligations to her, using the wife's own values:

|   |   |   |
|---|---|---|
| a. | Rainmaker Management | $ 2,000,000.00 |
| b. | Wilmore Corp. | $ 200,000.00 |
| c. | University | $ 6,000,000.00 |
| d. | Met-Life | $ 1,250,000.00 |
| e. | Sage Life | $ 5,000,000.00 |
| f. | Momentum Life | $ 2,845,000.00 |
| | TOTAL | |
| | | $17,295,000.00 |

MR. Mbigi offers these "riches" to his wife in satisfaction of his obligations to her — past and future.

**WHEREFORE**, the Respondent/Husband, LOVEMORE MBIGI, prays for the entry of an Order vacating the present Temporary Support Order, entering a new support order for child support only, in accordance with Florida Guidelines, and to have the wife accept the above outlined assets in satisfaction of her claims against him and he prays for such other and further relief that may be just proper and equitable.

Respectfully submitted,

CHARLES WENDER
Attorney-at-Law, Chartered
190 West Palmetto Park Road
Boca Raton, Florida 33432
    (561) 368-7004

By:_____
        Charles Wender, Esquire

Page 6 of 7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. Mail and/or facsimile to Knovack G. Jones, Esquire, LAW OFFICES OF KNOVACK G. JONES & ASSOCIATES, P.A., 18590 N.W. 67th Avenue, Suite 201, Miami Lakes, FL 33015, on this _5th_ day of July, 2002.

By:_____

Charles Wender, Esquire

## Exhibit 2: Funds Accessed by Mrs. Mbigi

| FUNDS ACCESSED | DATE | $ AMOUNT |
|---|---|---|
| **FUNDS CHANNELLED THROUGH MRS. MBIGI'S ABSA BANK MASTERCARD** | | |
| i.   Deposits(s) SA Rand 100 690 | 08/28/01 – 09/12/01 | $ 11 854 |
| ii.   Deposits(s) SA Rand 53 000 | 09/14/01 – 10/05/01 | $ 6 033 |
| iii.   Deposits(s) SA Rand 336 000 | 10/18/01 – 11/08/01 | $ 35 966 |
| iv.   Deposits(s) SA Rand 90 539 | 11/16/001 – 01/03/02 | $ 9 180 |
| v.   Deposits(s) SA Rand 11 701 | 01/04/02 – 01/08/02 | $ 1 186 |
| **SUB-TOTAL** | | $ 64 219 |
| **OCTOBER DRAFTS FOR SCHOOL FEES** | | |
| vi.   Bank Draft 444462 | 10/01/01 | $ 2 000 |
| vii.   Bank Draft 444463 | 10/01/01 | $ 2 000 |
| viii.   Bank Draft 444464 | 10/01/01 | $ 5 000 |
| **SUB-TOTAL** | | $ 9 000 |
| **OCTOBER 2001 TRAVEL ALLOWANCE / TRAVELLERS CHEQUES** | | |
| ix.   Transaction (SA Rand 130 989) | 10/02/01 | $ 14 490 |
| x.   Transaction (SA Rand 8 978) | 10/02/01 | $ 980 |
| **SUB-TOTAL** | | $ 15 470 |
| **OTHER WITHDRAWALS FROM FAMILY FUNDS** | | |
| xi.   Wachovia ($ 28 000 - $ 8 000) | 01/02/02 | $ 20 000 |
| xii.   Merrill Lynch Investments: J Mbigi Withdrawal | 10/17/01 | $ 42 000 |
| xiii.   Merrill Lynch Investments: Client J Mwaniki | October 2001 | $ 10 000 |
| xiv.   Jaguar Credit | Date unknown | $ 15 000 |
| xv.   World Savings | November 2001 – January 2002 | $ 26 000 |
| **SUB-TOTAL** | | $ 123 200 |
| **TOTAL ACCESSED FROM FAMILY FUNDS** | | $ 211 889 |

**The above constitutes $ 211 889 which Mrs. Mbigi denied to have withdrawn/ accessed at the time of the hearing.**

**To date Mrs. Mbigi has accessed a staggering amount of family funds:**

| SOURCE | AMOUNT |
|---|---|
| As per above analysis | $ 211 889 |
| Jackson National Life | $ 18 617 |
| MetLife | $ 13 000 |
| **TOTAL** | $ 243 506 |

P O Box 321, Strathavon, Johannesburg, SA 2031
46 Dennis Road, Atholhurst, Sandton, Johannesburg, SA
E-mail rmc@netactive.co.za
Phone (011 27 11) 786 5767    Fax (011 27 11) 786 1371
Cell (011 27) 82 800 3623

PMB 525, 21218 St. Andrews Boulevard
Boca Raton, FL 33433
E-mail lvmr9@aol.com
Phone (561) 477 0481    Fax (561) 477 7323
Cell (954) 609 7026 / (561) 212 9952